UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
KIRK BENOIT, *et al.*,                  )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 03-1917 (PLF)
                                        )
UNITED STATES DEPARTMENT                )
OF AGRICULTURE, *et al.*,[1]            )
                                        )
            Defendants.                 )
_____ )


OPINION

        This matter is before the Court on defendants' motion to dismiss plaintiffs'

complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil

Procedure.[2]  Upon consideration of defendants' motion, plaintiffs' opposition, defendants' reply,

and the entire record in this case, the Court will (1) grant summary judgment in favor of the

defendants on plaintiffs' Equal Credit Opportunity Act claims, and (2) dismiss for lack of subject

matter jurisdiction plaintiffs' claims under the United States Constitution, the Civil Rights Act of

1964, the Administrative Procedure Act, and the common law.

_____

[1]       The Second Amended Complaint named Ann Veneman, former Secretary of the
United States Department of Agriculture, as one of the party defendants.  The Court now
substitutes her successor, Edward Schafer, pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure.

[2]       The papers submitted in connection with this motion include: Defendants' Motion
to Dismiss Plaintiffs' Complaint Or, in the Alternative, to Transfer Venue ("Defs.' Mot.");
Plaintiffs' Opposition to Defendant USDA's Motion to Dismiss ("Pls.' Opp."); and Defendants'
Reply in Support of USDA's Motion to Dismiss Plaintiffs' Complaint Or, in the Alternative, to
Transfer Venue ("Defs.' Reply").  As its title implies, the USDA's motion to dismiss includes a
request to transfer any claims over which the Court concludes it has jurisdiction to the venues in
which the surviving claimants reside.  The Court's disposition of this matter makes it
unnecessary to consider that request.

## I.  OVERVIEW

This is a discrimination suit.  Fourteen African American farmers, all but two of whom opted out of the so-called <u>Pigford</u> litigation, <u>see</u> <u>Pigford v. Glickman</u>, 185 F.R.D. 82 (D.D.C. 1999), allege that the United States Department of Agriculture ("USDA") has, over the course of many years, discriminated against them on the basis of race (and, in the case of plaintiff Dorothy Deloney, on the basis of sex as well) in connection with the agency's federally funded credit and benefit programs.[3]

All of the plaintiffs assert that the USDA's allegedly discriminatory conduct entitles them to monetary damages under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA"); the Fifth and Fourteenth Amendments to the United States Constitution; Section 1981 of the Civil Rights Act of 1964, 42 U.S.C. § 1981 ("Section 1981"); and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq*.  Plaintiffs also assert common law tort claims.  <u>See</u> Second Amended Complaint ¶¶ 775-801 ("Compl.").  As discussed in more detail below, the defendants – hereinafter referred to collectively as "the USDA" – maintain that all of the plaintiffs' claims are barred by the doctrine of sovereign immunity.

---

[3]       The plaintiffs are Kirk Benoit of St. Croix, United States Virgin Islands; Eddie Cotton, Jr. of Pattison, Mississippi; Dorothy Deloney of Ashdown, Arkansas; Hezekiah Gibson of Manning, South Carolina; Charles Harris and Ruth Harris of Brundidge, Alabama; Alphonso James and Mariet James of St. Croix, United States Virgin Islands; Charles McDonald of Manning, South Carolina; Bruce Manigo of Charleston, South Carolina; Donnell Manigo and Randolph Manigo of Walterboro, South Carolina; Richard Pearson of Freeman, Virginia; and John Simmons of Williston, South Carolina.

## II.  STANDARDS OF REVIEW

The USDA moves to dismiss all of the plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  This is problematic as a procedural matter because, for reasons discussed below, the Court concludes that the USDA's challenges to plaintiffs' ECOA claims – unlike the USDA's challenges to plaintiffs' other claims – are not properly asserted under the rubric of Rule 12(b)(1) but must be considered under the summary judgment standard of Rule 56.  The Court therefore sets forth both the standard for resolving motions to dismiss for lack of subject matter jurisdiction and the standard for resolving motions for summary judgment.

### A.  Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  They therefore may hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress.  See, e.g., Beethoven.com L.L.C. v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Best v. United States, 522 F. Supp. 2d 252, 254 (D.D.C. 2007); Srour v. Barnes, 670 F. Supp. 18, 20 (D.D.C.1987) (citing City of Kenosha v. Bruno, 412 U.S. 507, 511, (1973)).  The United States may be sued for money damages only when it has expressly waived its immunity from suit.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988)).

Under Rule 12(b)(1), the plaintiffs bear the burden of establishing subject matter jurisdiction.  See Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375, 377 (1994); Moms Against Mercury v. FDA, 482 F.3d 824, 828 (D.C. Cir. 2007) (citing Georgiades v. Martin-Trigona, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984)).  In determining whether to grant a motion to

dismiss for lack of subject matter jurisdiction, the Court must accept all of the factual allegations

in the complaint as true, but may, in appropriate cases, consider certain materials outside the

pleadings.  See Jerome Stevens Pharmacies, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir.

2005).  The Court may either consider the complaint alone, or "the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts."  Herbert v. Nat'l Academy of Sciences, 974 F.2d

192, 197 (D.C. Cir. 1992).  While the complaint is to be construed liberally, the Court need not

accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged

in the complaint.  Nor must the Court accept plaintiffs' legal conclusions.  See Best v. United

States, 522 F. Supp. 2d at 255; Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C.

2003).


### B.  Rule 56: Motion for Summary Judgment

Summary judgment may be granted only if "the pleadings, the discovery and

disclosure materials on file, and any affidavits [or declarations] show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P.  56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d

at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the non-moving parties.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a

motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving parties' opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving parties are "required to provide evidence that would permit a reasonable jury to find" in their favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, 'there is no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat summary judgment, plaintiffs must produce more than "a scintilla of evidence to support [their] claims." Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## III.  EQUAL CREDIT OPPORTUNITY ACT CLAIMS

### A.  Background

All fourteen plaintiffs assert that the USDA violated the ECOA by discriminating against them in connection with the USDA's credit and non-credit benefit programs for farmers.[4] Generally speaking, plaintiffs have little in common except that they are all parties to this lawsuit.  Plaintiffs reside in five states and the United States Virgin Islands; they are or were engaged in very different farming enterprises; and, with a few exceptions, all of their claims are based on different factual allegations.[5]  Nevertheless, the plaintiffs' similarities are more important than their differences for purposes of this Opinion.  Two similarities are most relevant. First, all plaintiffs distill from their distinct factual allegations the same legal claim: that is, that the USDA discriminated against them in violation of the ECOA by, at various times and in various ways, (1) purposely losing or failing to act on their loan applications; (2) unreasonably delaying the processing of their loan applications; (3) denying their loan applications on the basis of race and (in one case) sex; (4) withholding loan funds for which they were approved; (5) requiring them to utilize supervised bank accounts; and/or (6) failing to inform them that local USDA decisions could be appealed.  See Compl. ¶ 787.  Second, all of the plaintiffs seek to assert ECOA claims that are timely only if they fall within the ambit of Section 741, a provision

---

[4]     Specifically, plaintiffs assert that they were discriminated against in connection with programs administered by the Farmers Home Administration or its successor agency, the Farm Service Agency.  "The former Farmers Home Administration . . . was a credit agency within USDA that was authorized, as its successor the Farm Service Agency is now, to make loans to farmers who are generally unable to obtain credit from commercial sources."  Defs.' Mot. at 3.

[5]     "Charlie and Ruth Harris, Alphonso and Mariet James, and brothers Bruce, Donnell and Randolph Manigo . . . are related and sue based on the same factual allegations, [but] the plaintiffs' claims otherwise rest on completely distinct sets of facts."  Defs.' Mot. at 14.

of law that waives the ECOA's generally applicable two-year statute of limitations for certain

individuals.  See Agriculture, Rural Development, Food and Drug Administration, and Related

Agencies Appropriations Act of 1999, Pub. L. 105-277, § 741, 112 Stat. 2681 (Oct. 21, 1998)

(codified at 7 U.S.C. § 2279 Historical and Statutory Notes) (hereinafter "Section 741").

After setting forth the legal framework within which plaintiffs' ECOA claims

must be considered, the Court (1) explains why the USDA's motion to dismiss plaintiffs' ECOA

claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil

Procedure is in fact properly resolved as a motion for summary judgment under Rule 56, and

(2) concludes that the USDA is entitled to summary judgment on plaintiffs' ECOA claims.

*B.  Legal Framework*

1.  The Equal Credit Opportunity Act

The ECOA creates a private right of action against a creditor who discriminates

against any applicant "with respect to any aspect of a credit transaction . . . on the basis of race,

color, religion, national origin, sex or marital status, or age . . . .".  15 U.S.C. § 1691(a); see

Garcia v. Johanns, 444 F.3d 625, 629 n. 4 (D.C. Cir. 2006).  The statute defines the term

"creditor" to include the United States government, see 15 U.S.C. §§ 1691a(e), (f), and thereby

waives the United States' sovereign immunity for claims brought under the ECOA.  See Moore

v. USDA, 55 F.3d 991, 994-95 (5th Cir. 1995); Williams v. Conner, 522 F. Supp. 2d 92, 99

(D.D.C. 2007).

A plaintiff must bring any claim under the ECOA within two years of the date of

the alleged violation.  See 15 U.S.C. § 1691e(f).  All of plaintiffs' ECOA claims are based on

allegedly discriminatory conduct that occurred before 2000, see Compl. ¶¶ 34-774, but plaintiffs

did not file this suit until September 15, 2003.  Thus, their claims are time-barred under the

ECOA's generally applicable statute of limitations.  Plaintiffs argue, however, that their claims

are properly before this Court pursuant to a limited waiver of the ECOA's statute of limitations

contained in Section 741.  See Garcia v. Johanns, 444 F.3d at 629 n.4.

Enacted in 1998, Section 741 was a response to a fundamental breakdown in the

USDA's system for processing discrimination complaints.  The civil rights office of the USDA

was essentially "dismantled" in the early 1980s and, as a result, many administrative complaints

of discrimination filed with the USDA between 1981 and 1996 "were never processed,

investigated or forwarded to the appropriate agencies for conciliation."  Pigford v. Glickman, 185

F.R.D. at 88.  The agency's failure to properly process these complaints effectively denied a large

number of complainants the right to seek relief under applicable anti-discrimination statutes –

such as the ECOA – because the limitations periods for those statutes expired while the

complainants waited for a response from the USDA.  See Administrative Civil Rights

Adjudications Under Section 741, 63 Fed. Reg. 67392, 67392 (Dec. 4, 1998) (explaining the

genesis of Section 741).

Congress addressed this problem by enacting Section 741, which retroactively

waived the ECOA's two-year statute of limitations for all individuals who had filed "eligible

complaints" with the USDA.  Congress defined an "eligible complaint" as "a nonemployment

related complaint that was filed with the Department of Agriculture before July 1, 1997 and

alleges discrimination at any time during the period beginning on January 1, 1981 and ending

December 31, 1996" – that is, during the period when USDA's complaints processing system

was virtually nonexistent – "in violation of the Equal Credit Opportunity Act . . . in

administering . . . a farm ownership, farm operating, or emergency loan . . . .".  7 U.S.C. § 2279

Historical and Statutory Notes, §741(e).  Congress also specified two avenues of relief for those who had filed eligible complaints.  First, these complainants were permitted to bring their claims of discrimination directly to federal court, provided they did so by October 21, 2000.  Id. § 741(a).  Second, in lieu of proceeding directly to court, these complainants were permitted to "seek a determination on the merits of [their] eligible complaint[s]" by the USDA in the first instance, id. § 741(b), and then obtain judicial review in federal court "if [their] eligible claim[s] [were] denied administratively."  Id. § 741(c).[6]  Congress instructed the USDA to render administrative decisions on complaints submitted under Section 741(b) within 180 days "to the maximum extent practicable."  Id. § 741(b)(3).

All of the plaintiffs now before the Court chose the latter route – that is, they sought administrative review by the USDA in the first instance under Section 741(b).

### 2.  USDA's Implementing Regulations

USDA regulations govern the internal agency review process contemplated by Section 741(b).  See 7 C.F.R. Pt. 15F ("Adjudications Under Section 741").[7]  Under those regulations, individuals who choose to obtain an administrative determination in the first instance must begin by filing a Section 741 Complaint Request with the USDA's Office of Civil Rights. See 7 C.F.R. § 15f.5.  The purpose of a Section 741 Complaint Request is to notify the agency

---

[6]      Section 741(c) provides, in pertinent part, that "if an eligible claim is denied administratively, the claimant shall have at least 180 days to commence a cause of action in a Federal court of competent jurisdiction seeking a review of such denial."  7 U.S.C. § 2279 Historical and Statutory Notes, § 741(c).  Section 741(d)(2) vests federal courts with jurisdiction over such actions.  Id. § 741(d)(2) (giving federal courts jurisdiction over "any civil action for judicial review of a determination in an administrative proceeding in the Department of Agriculture under this section").

[7]      Notably, plaintiffs do not challenge the validity of these regulations.  See Defs.' Reply at 18.

that the person submitting the request would like to have his or her underlying complaint considered under the procedures set forth in Part 15F.  See id. § 15f.4.  The mere docketing of a Section 741 Complaint Request does not establish that the underlying complaint is itself an "eligible complaint" within the meaning of Section 741.  See Defs.' Mot. at 10 ("Even though [an underlying complaint] enters the Section 741 process when a Section 741 Complaint Request is docketed, the regulations provide that an ALJ may, later in the process, dismiss the complaint upon finding that it does not meet § 741's 'eligible complaint' definition.").

All Section 741 Complaint Requests are automatically referred to the Director of the USDA's Office of Civil Rights (hereinafter the "Director").  See 7 C.F.R. § 15f.8.  If the Director decides that a complainant's underlying complaint is "eligible," and if he decides that the individual's underlying complaint is appropriate for informal resolution, he may offer to negotiate a settlement of the underlying complaint.  See id. §§ 15f.8, 15f.9.  If the parties successfully negotiate a settlement, then the Director will issue a "final determination" disposing of the underlying complaint.  See id. § 15f.9.  If, however, the Director decides that a complaint does not meet the eligibility requirements of Section 741, or if the Director chooses not to settle an underlying complaint, or if the parties' settlement efforts are unsuccessful, the Director issues a letter to the complainant explaining the Director's decision and informing the complainant of his right "to request formal proceedings" before an Administrative Law Judge.  See id.[8]  To obtain ALJ review a complainant must file a "request for a hearing" with the USDA within 30

---

[8]        According to the USDA, this particular review structure is mandated by Section 741, which incorporates the APA provisions governing formal adjudications.  See 7 U.S.C. § 2279 Historical and Statutory Notes, § 741(b)(1) (requiring the USDA to offer complainants an "opportunity for a hearing on the record"); 5 U.S.C. § 554(a) (providing that the APA provisions governing formal adjudications "appl[y] . . . in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing"); id. § 554(c)(1) (permitting offers of settlement).

days of receiving a decision letter from the Director, and in the case of those who received such a letter before February 14, 2003, within 90 days of that date.  See Defs.' Mot. at 12; see also 7 C.F.R. § 15f.9.[9]

If the complainant *does* timely request a hearing before an ALJ, then the ALJ will review the complainant's case, conduct a hearing and issue a proposed determination.  See 7 C.F.R. § 15f.13.  The ALJ's proposed determination will become the agency's "final determination" as to that complainant 35 days after it is issued – unless the ALJ's decision is appealed to the USDA's Assistant Secretary for Civil Rights or the Assistant Secretary *sua sponte* decides to review the ALJ decision.  Id. § 15f.24.  In the event of an appeal to the Assistant Secretary, the Assistant Secretary's decision becomes the agency's final determination. See id.  If the complainant *does not* timely request ALJ review, then the agency will administratively close the complainant's file.  See id. § 15f.9 ("Any request for formal proceedings [before an ALJ] received by USDA after the deadlines set forth in this section will not be accepted."); see also Defs.' Mot. at 34.

## C.  The Parties' Arguments

Plaintiffs maintain that they sought administrative determinations of their discrimination complaints under Section 741(b); obtained final determinations denying their claims; and are now entitled to assert their ECOA claims in this Court under Section 741(c) (which, to repeat, permits individuals to seek judicial review of an agency decision "if an administrative claim [of discrimination] is denied administratively").  See Pls.' Opp. at 22-32.

---

[9]     A complainant may also choose to interrupt or forego altogether the Director's informal review and proceed directly to formal ALJ review.  See 7 C.F.R. § 15f.10.  None of the plaintiffs currently before the Court chose this option, although Mr. McDonald and Mr. Pearson may still choose to do so.

Specifically, Mr. Benoit, Mr. Gibson, Mr. and Mrs. Harris and Mr. Simmons argue that their claims were "denied administratively" when they received letters from the Director declining to settle their claims.  See Compl. ¶¶ 66 (Mr. Benoit), 254 (Mr. Gibson), 377 (Mr. and Mrs. Harris), 770 (Mr. Simmons).  Mr. and Mrs. James argue that their claims were denied when Mr. James received a letter from the Director informing him that the USDA's attempts to resolve his complaint through alternative dispute resolution had failed.  See id. ¶¶ 442-43.  Ms. Deloney argues that her claim was denied when she received a letter from the Director informing her that the USDA would not engage in settlement negotiations with her because it had concluded that she never filed an "eligible complaint" within the meaning of Section 741(e).  See id. ¶ 154; see also Defs.' Mot., Ex. 6, Letter from USDA to Dorothy Deloney at 2.  Mr. Cotton and the three Manigo brothers, it seems, argue that their claims were denied when they received letters offering to settle some but not all of their claims.  See id. ¶¶ 99-100 (Mr. Cotton), 599 (Manigo brothers); see also Defs.' Mot. at 17.  Mr. McDonald and Mr. Pearson, who have not received letters from the Director declining to settle their claims, sue on the theory that their underlying complaints "have effectively been denied by the USDA's unreasonable delay in making a final determination on their complaints."  Id. ¶ 28.[10]

The USDA argues that this Court may not exercise subject matter jurisdiction over plaintiffs' ECOA claims for two reasons.  First, the USDA argues that Section 741 waives the ECOA's statute of limitations only for those who filed "eligible complaints," and that the

---

[10]    According to the USDA, Mr. McDonald has not received a letter from the Director because the Director has not finished informally reviewing his claim, and Mr. Pearson has not received a letter because Mr. Pearson's claim was referred to an alternative dispute resolution proceeding that has not yet concluded.  See Defs.' Mot. at 18.  Plaintiffs have attached a letter suggesting that settlement discussions between Mr. Pearson and the USDA have effectively concluded, and that those efforts were unsuccessful.  See Pls.' Opp., Ex. 11, Letter from Plaintiffs' Counsel to USDA at 2 (January 16, 2004).

filing of an eligible complaint therefore is a jurisdictional prerequisite to judicial review under

Section 741(c).  The USDA further argues that "[b]ecause § 741(c)'s 'eligible complaint'

requirement is jurisdictional, plaintiffs must allege in their pleading the facts necessary to meet

it."  Defs.' Mot. at 21.  But, says the USDA,

> *none* of the plaintiffs allege . . . that [they filed] "eligible
> complaints" within the meaning of § 741.  Moreover, based on
> their [Office of Civil Rights] files, it appears that only two
> plaintiffs [– Mr. McDonald and Mr. Pearson –] could prove this
> jurisdictional element even were it to be properly pled.

Id. at 20.  In other words, the USDA contends that the ECOA claims of Mr. Benoit, Mr. Cotton,

Ms. Deloney, Mr. Gibson, Mr. and Mrs. Harris, Mr. and Mrs. James, the Manigo brothers and

Mr. Simmons must be dismissed for lack of subject matter jurisdiction on the ground that they

have not and cannot "allege facts sufficient to show that their administrative complaints" – that

is, the underlying complaints on which their Section 741 Complaint Requests are based – "meet

the specifications of § 741's 'eligible complaint' definition."  Id. at 22.

Second, the USDA argues that this Court lacks subject matter jurisdiction over

plaintiffs' ECOA claims because none of the plaintiffs obtained a final administrative

determination of their claims before filing suit.  See Defs.' Mot. at 28-36.  Specifically, the

USDA argues that if a complainant chooses to proceed under Section 741(b), "Section 741(c)

permits judicial review only where an 'eligible complaint' has been 'denied administratively' by

USDA, *i.e.*, only after USDA has issued its final determination disposing of the matter."  Id. at

28.  And under the USDA's interpretation of its regulations, only ALJs (and, on appeal from ALJ

decisions, the Assistant Secretary for Civil Rights) are authorized to issue final determinations of

disputed complaints; the Director of the Office of Civil Rights is not.  See Defs.' Reply at 17

("The Director's review is by definition informal and his role is limited to deciding whether to undertake settlement negotiations with the complainant.").[11]

The USDA argues that the letters the Director sends to Section 741(b) complainants upon completing his initial review do not constitute final determinations or "denials" opening the door to judicial review under Section 741(c); rather, the only way that Section 741(b) claims are "denied administratively" is by way of formal ALJ rulings.  See Defs.' Mot. at 30.  Stated differently, the USDA argues that ALJ review is a prerequisite to judicial review of the agency's decisions for those who seek an administrative determination of their claims in the first instance.  See Defs.' Reply at 14-16.[12]  According to the USDA, all of the plaintiffs filed suit without seeking or obtaining formal ALJ review.  See Defs.' Mot. at 30; see also id. at 16 ("The farthest that any of plaintiffs pursued the Section 741 process [before filing suit] was to wait for the Director to complete his *informal* review of their complaints to assess whether they were *candidates for settlement*.").  Thus, says the USDA, the plaintiffs divested this Court of jurisdiction over their ECOA claims by "abandon[ing]" the Section 741 process without exhausting it.  Id. at 2.[13]

---

[11]     The Director is explicitly authorized to issue a "final determination" only if settlement efforts are successful.  See 7 C.F.R. § 15f.9.

[12]     Both sides seem to assume that this exhaustion requirement arises from the interaction of Section 741(b), Section 741(c), and 7 C.F.R. Pt. 15F.  That may be true.  Even if it is not, however, another provision of law requires administrative exhaustion here.  See 7 U.S.C. § 6912(e); see also Munsell v. United States Dep't of Agriculture, 509 F.3d 572, 580 (D.C. Cir. 2007) (Section 6912(e) imposes a mandatory, but non-jurisdictional, exhaustion requirement).

[13]     The USDA frequently articulates this argument in terms of "finality," but it is, in essence, an argument that Section 741(b) complainants must exhaust administrative remedies.

### D. The USDA's Jurisdictional Challenges

As noted, USDA argues that the Court lacks subject matter jurisdiction for two separate reasons: (1) none of the plaintiffs filed "eligible complaints" under Section 741, and (2) none of the plaintiffs obtained a final administrative determination from the USDA and therefore none of the plaintiffs exhausted their administrative remedies.  In the Court's view, neither of these arguments should have been asserted in a motion to dismiss for lack of subject matter jurisdiction.  As explained below, the eligible complaint argument and the exhaustion argument relate to the viability of plaintiffs' claims under Section 741 and the ECOA; they do not call into question the jurisdiction of this Court.  The Court therefore will not address these arguments under Rule 12(b)(1).

In <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 503 (2006), the Supreme Court observed that courts and litigants too often confuse or conflate two distinct concepts: subject matter jurisdiction over a controversy and "the essential ingredients of a federal claim for relief." To reduce the frequency of such unrefined analyses, the Court articulated a "readily administrable bright line" test for determining whether a disputed issue concerns a Court's subject matter jurisdiction as contrasted with an essential element of the plaintiff's claim:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . .  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

<u>Id</u>. at 515-16; <u>see also</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 394 (1982) (statutory limitations on the scope of a federal cause of action are jurisdictional in character if they "speak in jurisdictional terms or refer . . . to the jurisdiction of the district courts"); <u>Munsell v. United</u>

States Dep't of Agriculture, 509 F.3d at 580 (same); Fernandez v. Centerplate/NBSE, 441 F.3d

1006, 1009 (D.C. Cir. 2007) (same); Jaeger v. United States, 524 F. Supp. 2d 60, 63 (D.D.C.

2007) (same).  Thus, in order to decide whether the eligible complaint requirement and the

exhaustion requirement are jurisdictional in nature, the Court must determine whether Congress

unequivocally ranked them as such.

The USDA's first principal argument – relating to the eligible complaint

requirement of Section 741 – appears to progress as follows: (1) Section 741 waives the United

States' sovereign immunity; (2) the eligible complaint requirement limits the scope of that

waiver; and thus (3) the eligible complaint requirement amounts to a jurisdictional limitation.

Under Arbaugh, this argument cannot succeed.  Nowhere in Section 741 is the eligible complaint

requirement stated in "jurisdictional terms."  Zipes v. Trans World Airlines, Inc., 455 U.S. at

394.  Nor is the eligible complaint requirement incorporated directly into the jurisdiction-

conferring provisions of Section 741.  See id.; see also 7 U.S.C. § 2279 Historical and Statutory

Notes, §§ 741(d)(1), 741(d)(2).  The Court therefore concludes that while Section 741 "specifies,

as a prerequisite to its application, the existence of a particular fact" – namely, the filing of an

eligible complaint – the existence or non-existence of that fact was not intended to have

jurisdictional significance.  Arbaugh v. Y & H Corp., 546 U.S. at 513.  Rather, it appears that

Congress intended for the eligible complaint requirement to be treated as an essential element of

plaintiffs' ECOA claims when such claims are brought under Section 741.[14]

---

[14]     The Court is aware that this conclusion conflicts with the conclusions – or at least
the terminology – of other courts that have discussed Section 741.  See Ordille v. United States,
216 Fed. App'x 160, 167 (3d Cir. 2007) (designated as non-precedential pursuant to court rule);
Allen v. United States, Civil Action No. 03-92C, 2005 WL 6112631, at *6 (Fed. Cl. May 10,
2005); Mients v. United States, 50 Fed. Cl. 665, 670-71 (Fed. Cl. 2001).

The USDA's second principal argument – that the exhaustion requirement is jurisdictional – is even less persuasive.  It is true, of course, that "the existence of an administrative remedy automatically triggers a *non-jurisdictional* exhaustion inquiry," Avocados Plus, Inc. v. Veneman, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (emphasis added), and that a plaintiff's claim may be rejected if he or she fails to exhaust administrative remedies.  See, e.g., Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir. 2007); Lowe v. DEA, Civil Action No. 06-1133, 2007 WL 2104309, at *3 (D.D.C. July 22, 2007).  But "'[o]nly when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision . . . has the Supreme Court held that exhaustion is a *jurisdictional* prerequisite.'"  Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Industries, 727 F.2d 1204, 1208 (D.C. Cir. 1984) (emphasis added)); see also Avocados Plus, Inc. v. Veneman, 370 F.3d at 1248 (noting that only where "a statute . . . contain[s] sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion" may courts conclude that an exhaustion requirement is jurisdictional).  Here, neither Section 741 nor the ECOA itself contains "sweeping and direct" statutory language making exhaustion jurisdictional.  The Court therefore concludes that, like the eligible complaint requirement, the exhaustion requirement is not jurisdictional in nature.

In short, plaintiffs have pled colorable causes of action "arising under" the laws of the United States – here, the ECOA and Section 741 – and thereby properly invoked this Court's jurisdiction under 28 U.S.C. § 1331.  See Arbaugh v. Y & H Corp., 546 U.S. at 513-14.  The Court therefore has subject matter jurisdiction over plaintiffs' ECOA claims.

17

*E.  The USDA is Entitled to Summary Judgment on Plaintiffs' ECOA Claims*

Normally the legal sufficiency of the plaintiffs' claims would be considered under the standards for failure to state a claim set forth by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Here, however, that course would be inappropriate because both parties attach and rely upon materials outside the pleadings to support their arguments, and the Court has determined not to exclude those materials.  See Williams v. Conner, 522 F. Supp. 2d at 99.  Under such circumstances, the proper course is to treat a putative Rule 12(b)(6) motion as a motion for summary judgment, and to resolve it accordingly after giving all parties "a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d); see also 2 MOORE'S FEDERAL PRACTICE § 12.34[3][a] at 12-72 (3d ed. 2002).  In this case, there is no question that both parties have had a reasonable opportunity to present all materials pertinent to a motion for summary judgment; indeed, both parties have submitted and relied upon voluminous exhibits.[15]  The Court therefore will treat the USDA's motion as a motion to dismiss for failure to state a claim, and convert the motion to dismiss for failure to state a claim into a motion for summary judgment.

The Court concludes that the USDA is entitled to summary judgment on all of the plaintiffs' ECOA claims because (1) plaintiffs were required to exhaust their administrative remedies; (2) exhaustion requires ALJ review; and (3) there is no genuine dispute that plaintiffs

---

[15]  See, e.g., Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998) (noting that when parties attach and rely upon materials outside the pleadings, they invite the Court to consider those materials and are henceforth on constructive notice that the Court may proceed under Rule 56); In re Rothery, 143 F.3d 546, 549 (9th Cir. 1998) (no notice required when parties have had a "full and fair opportunity to ventilate the issues involved in the motion").  Discovery and/or supplemental submissions would not further clarify the issues the Court deems critical.  See Taylor v. FDIC, 132 F.3d 753, 765-66 (D.C. Cir. 1997) (district courts have discretion to decide that discovery is not necessary upon conversion).

failed to seek and obtain ALJ review.   Because plaintiffs' failure to exhaust entitles the USDA to

summary judgment on plaintiffs' ECOA claims, the Court need not address the USDA's eligible

complaint argument.

      Even when, as in this case, exhaustion is not a jurisdictional prerequisite to

judicial review, "[e]xhaustion of administrative remedies is generally required . . . 'so that the

agency has an opportunity to exercise its discretion and expertise on the matter and to make a

factual record to support its decision.'" Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004)

(quoting Oglesby v. United States Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990)); see also

Avocados Plus, Inc. v. Veneman, 370 F.3d at 1247.  For that reason, failure to exhaust precludes

judicial review if "'the purposes of exhaustion' and the 'particular administrative scheme'

support such a bar." Hidalgo v. FBI, 344 F.3d at 1258-59 (citation omitted).  Those conditions

clearly obtain here, because to permit Section 741 complainants to seek judicial review without

first exhausting the administrative process set forth by the USDA

> would undercut "the purposes of exhaustion, namely, 'preventing
> premature interference with agency processes, . . . afford[ing] the
> parties and the courts the benefit of [the agency's] experience and
> expertise, . . . [and] compil[ing] a record which is adequate for
> judicial review.'" Ryan v. Bentsen, 12 F.3d 245, 247 (D.C. Cir.
> 1993) (quoting Weinberger v. Salfi, 422 U.S. 749, 765 (1975)
> (alteration in original)).

Hidalgo v. FBI, 344 F.3d at 1259.

      Plaintiffs argue that they *have* exhausted their remedies, notwithstanding their

admitted failure to seek ALJ review.[16]  Specifically, they maintain that the USDA misinterprets

---

[16]     Alternatively, plaintiffs (seem to) suggest that any failure to exhaust should be excused.  In their view, the agency's undue delay in rendering decisions on their complaints justifies excusing any failure to exhaust.  See Pls.' Opp. at 29-33.  Without passing on whether the agency has moved too slowly with respect to plaintiffs' complaints, the Court concludes that excusing plaintiffs' failure to exhaust would be inappropriate.  Non-jurisdictional exhaustion

its own regulations when it argues that exhaustion requires ALJ review.  See Pls.' Opp. at 22.

According to the plaintiffs, the USDA's regulations give complainants "an either/or option:

either have the Director . . . determine the merits of the claim or take the claim to an ALJ."  Id. at

23.  Plaintiffs contend that they chose the former option; that the letters they thereafter received

from the Director set forth final determinations as to their claims; and that once they received

those letters – or, in the case of Mr. McDonald and Mr. Pearson, once they had waited for such

letters for an unreasonably long time – their claims had been "denied administratively" within the

meaning of Section 741(c).  At that point, say plaintiffs, they were entitled to assert their ECOA

claims in this Court.  See id. at 22-30.

        Plaintiffs' argument must fail because their basic theory – that is, that the letters

they received from the Director constitute final determinations or administrative denials of their

claims – cannot be squared with the language and structure of the regulations.  The regulations

make clear that the administrative process is exhausted when the agency issues its final

determination, see 7 C.F.R. § 15f.26; that the final determination means "the final USDA

decision made on your complaint under these rules," id. § 15f.4; and that, in the absence of a

settlement with the Director, a determination is final 35 days after an ALJ issues a proposed

decision (absent review of that decision by the Assistant Secretary).  Id. § 15f.24.  If the parties

---

requirements may be excused if "the litigant's interests in immediate judicial review outweigh
the government's interests in the efficiency or administrative autonomy that the exhaustion
doctrine is designed to further."  McCarthy v. Madigan, 503 U.S. 140, 145-46 (1992).  Here,
excusing the exhaustion requirements would (1) undermine the "administrative autonomy that
the exhaustion doctrine is designed to further," McCarthy v. Madigan, 503 U.S. at 145-46;
(2) frustrate other purposes of the exhaustion doctrine, see Glisson v. United States Forest
Service, 55 F.3d 1325, 1327 (7th Cir. 1995) (noting that finality, exhaustion and related doctrines
help ensure that "when the administrative proceeding does come before the court, the court will
have before it the mature, considered, and final articulation of the basis of the agency's action");
and (3) add another layer of cost, complexity and uncertainty to the USDA's Section 741
complaints process.  The Court therefore will not excuse plaintiffs' failure to exhaust.

do not settle, the Director is not authorized to make a final determination. Rather, the Director is only authorized to "seek to resolve the complaint informally with the complainant," id. § 15f.8, and, if settlement is unsuccessful, to inform the complainant of his "options, including [his] right to request formal proceedings before an ALJ . . . within 30 days of receipt of notice from the Director that [USDA] will not settle the complaint." Id. § 15f.9.[17]   In contrast, there are various circumstances under which ALJs are authorized to issue proposed decisions which, absent internal review by the Assistant Secretary, see id. § 15f.24, become final after 35 days.  See id. § 15f.12 (authorizing the issuance of a proposed decision if the ALJ concludes that the complainant has not filed an eligible complaint, or there is no genuine dispute of fact); id. § 15f.13 (after a hearing); id. § 15f.16 (on the record without a hearing).

In short, the language and structure of the regulations offer no support for plaintiffs' view that the "informal review or negotiations" undertaken by the Director can themselves produce a final determination in the absence of settlement.  Id. § 15f.10.[18]  Rather, the regulations make clear that plaintiffs were obligated to seek ALJ review if they desired to obtain a final determination (in the form of an ALJ decision or a decision by the Assistant Secretary for

---

[17]     Plaintiffs maintain that the language of 7 C.F.R. § 15f.9 supports their "either/or" theory of the administrative process in one particular way.  They argue that Section 15f.9 states that the Director must inform complainants of their options "including" ALJ review when he declines to settle their complaints, and that the word "including" implies that complainants have another option – namely, "the statutory right to sue in federal court under Section 741(c) and (d)."  Pls.' Opp. at 24.  Plaintiffs offer no authority – or even analysis – for this interpretation, and the Court rejects it.  Rather, the Court agrees with the USDA that the language and structure of Part 15F indicate that the "other option" assumed by Section 15f.9 is that complainants might choose not to proceed further with their claims on the view that the additional time and expense would not be worthwhile.  See Defs.' Reply at 16.

[18]     Nor can plaintiffs argue that this interpretation was unforeseeable.  See Pls.' Opp., Ex. 10, Letter from USDA to Plaintiffs' Counsel at 2 (informing plaintiffs' counsel that "the purpose of the administrative review [by the Director] is to facilitate [the Director's] decision as to whether we will settle a given case").

Civil Rights upon review of an ALJ decision) and thereby exhaust their administrative

remedies.[19]

The USDA asserts, and the plaintiffs do not dispute, that in 2003 "each of the

plaintiffs except for McDonald and Pearson received a letter from [the USDA] informing them

that [USDA] had reviewed the plaintiff's complaint and explaining the outcome of that review."

Defs.' Mot. at 16-17.  These letters – "all sent in care of plaintiffs' counsel and includ[ing] a

copy of the Section 741 regulations," id. at 18 – informed the recipients that the Director would

not engage in informal settlement negotiations with them for various reasons.[20]  All of these

letters included the following admonition:

> Pursuant to [Section 741], if you disagree with our decision you
> must request a hearing before an administrative law judge (ALJ)
> within thirty (30) days of receipt of this letter.  Otherwise, USDA
> will close your file in this matter.  A copy of the regulations
> governing this procedure is enclosed for your convenience. . . .  If
> you receive the ALJ's decision and you are not satisfied, you may
> pursue your complaint by filing an action in Federal District Court.

Pls.' Opp., Ex. 13, Letter from USDA to Kirk Benoit at 1; see also id., Exs. 14, 15, 16, 17, 18,

19, 20 (letters from the Director to Ms. Deloney, Mr. Gibson, the Manigo brothers, Mr. Cotton,

Mr. and Mrs. Harris, and Mr. and Mrs. James, respectively); Defs.' Mot., Ex. 18 (letter from the

Director to Mr. Simmons).  Thus, these letters clearly advised the recipients that the Director's

---

[19]     Even if the regulations were ambiguous on this point (in the sense that they
offered some support for plaintiffs' "either/or" theory) the Court would defer to the USDA's
interpretations of its own regulations because those interpretations are not plainly erroneous.
See, e.g., S.A. Storer & Sons Co. v. Secretary of Labor, 360 F.3d 1363, 1368 (D.C. Cir. 2004)
("An agency's interpretation of its own regulations is entitled to 'substantial deference' and even
receives 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'")
(quoting Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994)).

[20]     Again, the letters sent to Mr. Cotton and the three Manigo brothers, unlike the
letters sent to the other plaintiffs, informed them that the Director would be willing to engage in
informal settlement negotiations with respect to *some* of their claims.

informal decision did not constitute a final determination; that they were obligated to seek ALJ review to keep their Section 741 Complaint Requests alive; and that ALJ review was a prerequisite to judicial review.  This message was reinforced by the enclosure of the regulations setting forth the administrative scheme in its entirety.

The USDA asserts that the plaintiffs who received letters never requested ALJ review before or after filing suit, and that those who did not receive letters (Mr. McDonald and Mr. Pearson) have similarly failed to request formal proceedings.  See Defs.' Mot., Ex. 1, Declaration of Frederick D. Isler ¶¶ 10 (Mr. Benoit), 13 (Mr. Cotton), 17 (Ms. Deloney), 21 (Mr. Gibson), 25 (Mr. and Mrs. Harris), 29 (Mr. and Mrs. James), 34 (Manigo brothers), 39 (Mr. Simmons), 43 (Mr. Pearson), 47 (Mr. McDonald) ("Isler Decl.").[21]  Plaintiffs do not contest this crucial factual assertion.  See Pls.' Opp. at 30.  That being the case, there is no genuine dispute with respect to whether the plaintiffs failed to exhaust their administrative remedies.  As the Court has already determined that exhaustion – although not jurisdictional – is a prerequisite to judicial review under Section 741(c), and that the plaintiffs have offered no reason to excuse their failure to exhaust in this case, the USDA is entitled to summary judgment on plaintiffs' ECOA claims.[22]

---

[21]     Mr. Isler is the USDA official charged with "overseeing and supervising the program discrimination complaint process administered by [the Office of Civil Rights]."  Isler Decl.  ¶ 1. Plaintiffs argue that this Court should not consider Mr. Isler's declaration, mainly on the ground that it contains inadmissible hearsay.  See Pls.' Opp. at 8.  This argument is beside the point here because plaintiffs do not dispute the only pertinent facts – that is, the facts relating to their failure to exhaust.

[22]     To be clear, the Court grants summary judgment on plaintiffs' ECOA claims only with respect to the issue disputed by the parties: that is, whether the plaintiffs may seek judicial review of the agency's decisions and assert their ECOA claims before this Court pursuant to Section 741(c).  The Court need not, and does not, express any view as to the merits of the plaintiffs' underlying complaints of discrimination.

## IV.  PLAINTIFFS' OTHER CLAIMS

Plaintiffs also bring claims under various provisions of the United States Constitution, the civil rights laws, the APA and the common law.  These claims do not require extended discussion.  Briefly stated, plaintiffs claim that the USDA's allegedly discriminatory conduct violated their rights to equal protection of the laws and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution; denied them their rights to "make and enforce contracts" on the same terms as white citizens under Section 1981 of the Civil Rights Act of 1964; and tortiously subjected them to "untold emotional distress."  See Compl. ¶¶ 775-80 (constitutional claims), 789-94 (claims under Section 1981), 799-801 (claims for negligent infliction of emotional distress).  Plaintiffs also argue that they are entitled to money damages under the APA for the USDA's unreasonable delay in processing their complaints.  See id. ¶¶ 795-98.

As noted above, the USDA has moved to dismiss all of these claims for lack of subject matter jurisdiction.  The USDA argues that the plaintiffs' claims under the Constitution, Section 1981 and the APA must be dismissed because the United States has not waived its sovereign immunity to damages actions under these statutes.  The USDA further argues that plaintiffs' negligent infliction of emotional distress claims must be dismissed because plaintiffs have failed to exhaust the administrative process for pursuing such claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq.  See Defs.' Mot. at 36-40.

The United States has not waived its sovereign immunity to damages claims under the Constitution, see Jackson v. Bush, 448 F. Supp. 2d 198, 201 (D.D.C. 2006), Section 1981, see Hohri v. United States, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987), or the APA.  See 5 U.S.C. § 702.  Moreover, it is established that the FTCA

is the exclusive avenue of relief for parties asserting tort claims against the United States – and

that the FTCA's exhaustion requirement is a jurisdictional prerequisite to suit.  See Simpkins v.

District of Columbia, 108 F.3d 366, 371 (D.C. Cir. 1997) (citing Odin v. United States, 656 F.2d

798, 802 (D.C. Cir. 1981)); Hayes v. United States, 539 F. Supp. 2d 393, 398-99 (D.D.C. 2008).

Plaintiffs do not dispute that their claims for monetary damages under the

Constitution, Section 1981, or the APA are barred by sovereign immunity.  See Pls.' Opp. at 33.

Nor do they dispute that they have failed to begin (let alone exhaust) the administrative review

process mandated by the FTCA.  See id.  The Court therefore will dismiss all of the plaintiffs'

claims under the Constitution, Section 1981, the APA and the common law of torts for lack of

subject matter jurisdiction under Rule 12(b)(1).[23]


## V.  CONCLUSION

For the reasons stated above, the Court will grant summary judgment in favor of

the USDA on plaintiffs' ECOA claims and dismiss plaintiffs' other claims for lack of subject

matter jurisdiction.  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 8, 2008

---

[23]     Plaintiffs have suggested that if "this Court agree[s] with USDA [that sovereign
immunity bars plaintiffs' claims under the Constitution, Section 1981 and the APA], leave to
amend to seek equitable relief on these claims should be liberally granted."  Pls.' Opp. at 33.
The Court declines to grant permission to amend the Second Amended Complaint in the absence
of a formal motion to that effect.  See Shane v. United States, Civil Action No. 07-577, 2008 WL
101739, *10 n.11 (D.D.C. Jan. 9, 2008).